Benham *v.* Hendrickson.

Thomas C. Benham and others.

*v.*

Philip Hendrickson, executor &c., and others.

Under the following devise: "I give and bequeath the dwelling-house and lot of land where I reside, in Canal street, of 150 feet front on said street, to my son T. C. B., and my daughter A. B.," in fee, with a subsequent direction that the executor sell " the dwelling-house and lot adjcining where I reside, of about fifty feet front on Canal street, and, also, the lot on the south side, where the wheelwright-shop now stands, fronting said street,".with a gift of the proceeds to testator's children J. and S.,—*Held,*

(1) That the court had jurisdiction to construe the will on the ground of its uncertainty.

(2) That the number, time of purchase, relative situation, occupation and use of the respective lots, and, also, their improvement, enclosure and designation by the testator, in his life-time, could be shown, in construing the will.

Bill for construction of devise and relief in connection therewith. On final hearing, on pleadings and proofs.

*Mr. G. O. Vanderbilt* and *Mr. J. H. Stewart*, for complainants.

*Mr. J. F. Hageman,* for defendants.

The Chancellor.

Thomas Benham, deceased, late of Princeton, by his will dated June 30th, 1869, after directing payment of his debts and funeral expenses, gave to his wife, who survived him, but is now dead, the use of all his real estate and household goods and furniture for life, with power to dispose of any part of that personal property and apply the proceeds of the sale thereof to her own use. He then directed his executor to sell the balance of his personal property, and apply the proceeds to the payment of his debts and funeral expenses. He then gave certain pecuniary legacies ($500

Benham *v.* Hendrickson.

altogether) to grandchildren, and then disposed of his real estate, after the death of his wife, as follows:

"Item.—I give and bequeath the dwelling-house and lot of land where I reside, in Canal street, of 150 feet front on said street, after the decease of my wife, to my son Thomas C. Benham, and my daughter Alice C. Benham, share and share alike, during their natural lives, and then to their heirs and assigns forever.

"Item.—It is my will, and I do hereby order and direct my executor, after the decease of my wife, to sell, either at public or private sale, the dwelling-house and lot adjoining where I reside, of about fifty feet front on Canal street, and, also, the lot on the south side, where the wheelwright-shop now stands, fronting said street, and out of the proceeds of such sale to pay the legacies above mentioned.

"Item.—I give and bequeath the balance of the proceeds of the sale of the last-mentioned lots, after paying the legacies and expenses of selling and settling my estate, to my son John Benham, and my daughter Sarah Benham, share and share alike."

The real estate owned by the testator at his death, and at the time of making his will, consisted of what was originally two adjoining lots of land on Canal street, in Princeton, one of 150 feet front, conveyed to him by Robert F. Stockton, by deed dated July 9th, 1833, and the other of 50 feet front, conveyed to him by Richard Stockton, by deed dated April 3d, 1853. These lots were, when he bought them, both unimproved. The first building erected on the property was a blacksmith-shop, which was almost wholly put upon the lot of 150 feet front, at the southerly corner thereof, on Canal street. It was built in 1834. The testator next built, in the same year, what is called in the cause his homestead house. It was erected on the same lot. He next built a barn on the same lot, at the northerly corner thereof, on the rear. He provided for access to the barn from the street by a lane along the northerly side of the lot. After building the barn, he next built a wheelwright-shop on the southerly end of the lot of 50 feet which he bought of Richard Stockton as before mentioned, and built a pig-pen and corn-crib on the rear of the lot of 150 feet. He enclosed, by a fence entirely surrounding it, a part of that lot north of the

homestead house. The part so enclosed was 41 feet front on the street. The fence on the street and on the south side of the lot was a paling fence, and on the north and east sides it was what is called a board fence. On this lot so fenced in, the testator, about 1846, erected a house, to be rented, and which he did rent to various tenants up to the time of his death. Before he built the house upon it, he used the lot for grass or raising potatoes, and it was called the "potato lot." The lane was 10 feet wide at the street, and there was a double gate at the entrance there. There was no entrance to the barn from the street, except by the lane. The executor has sold part of the lot (a piece 30 feet front) on which the wheelwright-shop stands, and he proposed to sell the tenant-house property, including therein the lane and barn, and, indeed, extending the tenant-house lot easterly to the rear line of the original lot, and northerly to the northerly fence of that lot.

The bill is filed by the testator's son and daughter Thomas and Alice, to whom he devised the house and lot where he resided, for a construction of the will as to the extent of the property devised to them, and, claiming that they are entitled to the whole of the lot whereon the wheelwright-shop stands, because the devise to them was of a lot of 150 feet front on Canal street, which dimensions necessarily include the whole of the property after taking the tenant-house lot therefrom (there being just 150 feet front on the street from the southerly corner of the tenant-house property to the southerly corner of the lot on which the wheelwright-shop stands), they ask that the executor may be decreed to account to them for the proceeds of the sale of the part of that lot which he has sold. They claim, also, that the tenant-house property directed to be sold by the will, although spoken of therein as about 50 feet front, does not include the lane or the barn, nor any land except that which was enclosed within the fences around the curtilage of that property.

The answering defendants insist that the complainants are entitled to no relief, and that they have an adequate remedy at law.

It is clearly within the province of this court to construe the devises in question, and to declare the intention of the testator in the language which he has used. *Youmans* v. *Youmans, 11 C. E. Gr. 149; Lore* v. *Stiles, 10 C. E. Gr. 381,* and cases there cited. And it is manifest that the complainants have not an adequate remedy at law. The executor has, under the power given to him by the will, sold land which they insist was devised to them, and he is about to pay over the proceeds to legatees. He is about to sell other land which, as they claim, was devised to them; and if he does so, and sells what in fact was devised to them, their title will be clouded and he will have sold, under a mistaken construction of the devise, land which he had no power to sell. It is enough, however, to say that the uncertainty of the devises of itself furnishes sufficient reason for recourse to this court for construction.

The intention of the testator, judging from the situation and history of the property devised, was, notwithstanding the fact that he described in the will the property devised to the complainants as being of the dimensions of 150 feet front, to devise to them only the homestead property, exclusive of the lot on which the wheelwright-shop stands. The statement of the frontage was clearly a mistake. The subsequent direction to sell the wheelwright-shop lot is conclusive on that head. And as to the extent of the latter lot, the wheelwright-shop lot, I see no reason for saying that it was not his intention to devise the entire lot bought by him of Richard Stockton, except so much of it (apparently a very small part) as is occupied by part of the blacksmith-shop, part of which appears to have been built over the line. Nor do I perceive any ground for excluding from it so much of the lot as the open shed (used sometimes in connection with the blacksmith-shop for shoeing horses) stands upon. It does not appear that that shed was built for use in connection with the blacksmith-shop, in front of which there is a shed which was built and used for and in the business of the shop. The language of the tes-

Benham *v.* Hendrickson.

tator is, " the lot on the south side " (of his dwelling-house) " where the wheelwright-shop now stands." The lot where it stands is the lot bought of Richard Stockton. It appears to have been separated from the other lot by a fence from the corner of the open shed (which is nearly on the line) to the rear line. Nor does it make any difference that the shed was never rented with the wheelwright-shop; the wheelwright-shop is referred to only to designate the lot to which the testator referred.

When it is considered that the tenant-house, which is referred to by the testator as " the dwelling-house and lot adjoining, where I reside, of about 50 feet front on Canal street," was completely enclosed in fence, and had been so for years; that only the property included within the enclosure was rented; that the testator reserved to himself, and occupied, in connection with his use of his homestead property, to which it was a convenient if not a necessary adjunct, all the rest of the property round about the tenant-house enclosure (the open part in the rear of it being his barn-yard), it seems quite clear that he intended, by the language which he used, to describe only the tenant-house and the land within the enclosure. It was, by separation and by long-continued use, an identifiable and established property. It did not include, and it never had included, anything more than that which was enclosed in fence. The testator always considered the land outside of the enclosure part of his homestead lot, and there is nothing to indicate an intention on his part to include in the devise of " the lot " under consideration, anything more than that which had constituted the lot from the time when he fenced it in, separating it from the rest of the land.

I am unable to determine, with any approach to accuracy, the values of the respective properties from the evidence; but I am inclined to think that it will be found that the values are such, if the wheelwright-shop lot be regarded as substantially the same as the Richard Stockton lot (that is, of about 50 feet front), as to confirm the view I have

taken as to the testator's intention, or, at all events, not to militate against it. The construction, however, does not in any wise depend on that consideration.

The executor will be restrained from selling any more land with that property. The costs of this suit must be paid out of the estate.